## ODELL HARDWARE COMPANY v. HOLT-MORGAN MILLS.

(Filed 11 April, 1917.)

1. Receivers—Corporations—Time to File Claims—Additional Time—Court's Discretion.

It is within the discretion of the Superior Court judge to permit a creditor of a defunct corporation to file his claim with the receiver beyond the time theretofore generally allowed the creditors, so that he may share in the surplus of the assets, without disturbing the payments theretofore made.

**2. Receivers—Corporations—Claims—Contract—Termination—Electric Companies.**

> Where an electric power supply company, under a contract with a manufacturing company, is to receive a stated monthly sum for an unfixed period, for the investment and maintenance, etc., of the local line transmitting the electricity, in addition to that charged for the power used, and has shut off the supply upon the insolvency of the corporation, such act amounts to a termination of the contract, and.the electric company is not entitled to an allowance from the receiver for such maintenance charge, etc., thereafter.

APPEAL by the National Bank of Fayetteville from an order allowing the claim of the Carolina Power and Light Company in the sum of $4,264.42, made by *Winston, J.,* at November Term, 1916, of CUMBERLAND.

*Cook & Cook, Robinson & Lyon for appellant.*
*Rose & Rose for the appellee, Carolina Power and Light Company.*

BROWN, J. It appears from the record that the defendant corporation was placed in the hands of receivers in April, 1916, and an order made requiring the creditors to file their claims on or before 15 May, 1916. The Carolina Power and Light Company, within the period named in the notice, filed with the receivers its claim itemized and verified as follows:

RALEIGH, N. C., 29 April, 1916.

HOLT-MORGAN MILLS, *Fayetteville, N. C.*

*To* CAROLINA POWER AND LIGHT COMPANY, *Dr.*

1915

| | | |
|---|---|---|
| June 30. | To amount power bill for month | $ 546.74 |
| July 31. | " " " " " " | 397.77 |
| Aug. 31. | " " " · " " " | 487.01 |
| Sept. 30. | " " " " " " | 430.90 |
| | | $1,864.42 |

Some time after 15 May, 1916, the said Power and Light Company made application to the Superior Court for permission to file an additional claim for $2,400. Permission was granted and the other creditors excepted. We are of opinion that it was within the sound discretion of the judge of the Superior Court to permit the filing of the claim, although the time fixed in the original order had expired.

20—173

It has been held in other States whose practice is similar to that of North Carolina that the court may, in its discretion, permit a creditor to come in and prove his claim at any time before the actual distribution of the funds, or even after partial payments have been made, if there is a surplus in the hands of the receivers, so as not to interfere with payments already made. *Wall v. Young,* 54 N. J. Eq., 24; *Grinnell v. Ins. Co.,* 16 N. J. Eq., 283; *People v. Ins. Co.,* 79 N. Y., 267; *In re Ziegler,* 98 N. Y. App. Div., 117; *Smith v. Ins. Co.,* 4 Hun (N. Y.), 127; *Ins. Com. v. Ins. Co.,* 20 R. I., 7; *In re Eddy,* 15 R. I., 474.

The claim was referred to the receivers for investigation and adjudication. They refused to allow the claim and reported against it. Their report was overruled and the additional claim of $2,400 was allowed. The other creditors, who had filed their claims, excepted.

The claim of the said Power and Light Company, which has already been filed and allowed, appears to have been based upon a written contract for the supply of electical power to the defendant mills by the Power and Light Company. The additional sum of $2,400 is demanded for investment and maintenance charge under the following clauses of the contract:

"Second. In consideration of company making and maintaining necessary investment to supply power, consumer agrees to pay to company a monthly investment and maintenance charge of $0.9375 for each horse-power of said aggregated rated capacity, whether any power is used or not. If consumer at any time during any month shall take power in excess of said aggregate rated capacity, it shall pay for such month an investment and maintenance charge of $0.9375 for each electrical horse-power of the maximum power during said month. In estimating said maximum electrical horse-power, however, there shall not be included peaks lasting less than two minutes, or peaks due to short circuits or accidents to consumer's machinery, or necessary peaks due to starting machinery at regular times.

"In addition to said investment and maintenance charge, consumer shall pay at end of each month 3.5 mills per kilowatt hour for all energy used, as shown by watt meter to be furnished by company."

It is admitted that the said mills failed in business and were closed down on 26 September, 1915, and remained closed until receivers were appointed, and it is for this period that the additional $2,400 is claimed, during which time it is also admitted that the Power and Light Company furnished no electrical current to the defendant.

The judge of the Superior Court, while overruling the receivers, failed to find the facts, and simply allowed the additional claim. Not-

withstanding this, we think that we can properly dispose of the case, for in our opinion upon all the evidence the additional claim of $2,400 should not be allowed.

There were only two witnesses examined: H. L. Hansen, the auditor of the Power and Light Company, and J. A. Withers, secretary and treasurer of the mills company. Hansen testifies that the claim for $1,864.42 was made out by his predecessor, Mr. Dalton, 29 April, 1916, seven months after the mills closed down, and filed with the receivers; that Dalton had possession of the contract and had kept a record of all the charges; that when he succeeded Dalton he found this contract in the Power and Light Company's papers, and after consultation with the attorney for the Power and Light Company decided to file an additional claim for $2,400. It appears in evidence that no power was actually furnished after 26 September because the mills had failed and been closed up.

Mr. Withers testifies that the current from the Power and Light Company was cut off 26 September, 1915, at the mill by the Power and Light Company itself; that it was also cut off at the same time by the Power and Light Company's substation. He further testifies that on one occasion, subsequent to 26 September, 1915, he had occasion to run some machinery in the mill and needed the power, and as he could not get it he had to use a hand-power machine. He further testifies that no reason was ever given to him or the officers of the company for the cutting off of the power by the Power and Light Company, and that it was cut off without notice.

We are of opinion that the contract upon which this claim is based has no fixed period for its continuance. The mills company had the right to terminate it at the end of any month. This was admitted upon the argument. The Power and Light Company had notice of the condition of the mills, and itself cut off the power, not only at the mill but at its substation, thereby terminating the contract. It is perfectly evident that they regarded the contract as terminated by the shutting down of the mills on account of their insolvent condition. This was evidently the view of Mr. Dalton, the auditor, when he made out his account for the power furnished. The filing of the additional account seems to have been an afterthought.

Upon all the evidence we are of opinion that the claim should not be allowed. The original claim of $1,864.42 is not contested.

Reversed.